## Utz Potato Chip Co., Inc. v. York Parachuting Center, Inc.

*Robert E. Campbell,* for plaintiffs.
*Daniel Fry* and *John T. Miller,* for defendants.

MacPHAIL, *P.J.*, March 24, 1977 — Plaintiffs own real estate contiguous to or in the immediate vicinity of Hanover Airport. Their land is and has been for many years used for agricultural purposes except the lands of Hanover Shoe Farms, Inc. which are used as pasture for the world's largest standard bred horse breeding farms. In 1974, 1975, and the early part of 1976, sport parachuting activities were conducted from airplanes originating from Hanover Airport. The within action was instituted when a number of the parachutists missed the assigned target area and dropped onto lands of plaintiffs causing destruction of crops and "spooking" of the horses. In May of 1976, a consent decree was entered on an application for a temporary injunction which decree prohibited activities that could be reasonably expected to result in parachutists landing on plaintiffs' property.

At trial it appeared that defendants Gebhart own and operate the Hanover Airport, that they were aware of the parachuting activities and that the target area used by the parachutists was owned by them but leased to a Kenneth Hostetter (who is not a party to this action). Mr. Gebhart also testified that neither he nor his wife is associated with defendant, York Parachuting Center, Inc. (hereinafter referred to as YPC), that they have no control over the activities of that organization and that their only connection with the parachuting activities is that airplanes leave from and return to their airport as do many other airplanes. They did admit that there was one sky jump show at their airport which they sponsored, conducted or authorized and during the course of which there was an errant jump (a parachutist landed on property not a part of the target area).

George Bolen, Jr. testified as the president of YPC. He said that the parachutists are neither members nor employes of YPC, but that YPC renders services to the parachutists. Specifically, YPC furnishes the airplanes, keeps a log on the jumps and the jumpers and makes certain that a jump-master is in the airplane for every jump. YPC also negotiated with Hostetter for the target area which is contiguous to Hanover Airport. (Since the entry of the consent decree, a different target site has been found which is either owned or leased by Kenneth Hostetter.) Bolen and his witnesses offered evidence to show that the vast majority of the parachutists are successful in landing on target. Nevertheless, by their own count, there were 78 "out-jumps" in 1975-76. The evidence indicated that the more experienced the parachutist is, the better his accuracy should be. However, no one was able to guarantee 100 percent accuracy for any jumper. There was also testimony that each of the parachutists is insured to cover property damage the parachutist might cause as a result of a jump.

Plaintiffs testified that coping with errant parachutists was a serious problem. Most of the parachutists, when discovered, would not identify themselves. Some not only caused damage when they landed but caused even more damage when they left the fields. Plaintiffs complained that they simply could not provide the security nor employes to "catch" every errant parachutist, nor could they estimate damages they had already suffered because some of it was done without plaintiffs' knowledge and was in areas where the exact amount of damage could not be ascertained without causing further damage. There was no evidence however of damage to the Francis Murren

farm. None of plaintiffs had given permission to the parachutists to land on their property but Lewis Klunk did accept compensation from YPC for damages caused prior to the date he received the payment thereof. Thereafter, there were other errant parachutists who landed on his property.

## FINDINGS OF FACT

1. Parachutists jumping from airplanes originating from Hanover Airport have landed on property owned or occupied by plaintiffs (excluding Francis J. Murren), causing damage in an unspecified amount to that property.

2. The parachute jumps are organized, monitored and/or supervised by YPC.

3. Mr. and Mrs. Gebhart have no control over the activities of YPC but have conducted, authorized and/or sponsored one sky jump show.

## CONCLUSIONS OF LAW

1. The "out-jumps" constitute a continuing trespass to plaintiffs (exclusive of Murren).

2. Plaintiffs have no adequate remedy at law.

3. Plaintiffs are entitled to damages but have failed to prove the amount thereof.

## DECREE NISI

And now, March 24, 1977, it is ordered, adjudged and decreed that:

1. Cyprian N. and Betty J. Gebhart be and they are hereby permanently enjoined from conducting, permitting or authorizing sky diving or sky jump shows at Hanover Airport.

2. York Parachuting Center, Inc. is hereby permanently enjoined from providing services to

parachutists using as a landing target any area which could be reasonably expected to result in parachutists landing on property of plaintiffs exclusive of Francis J. Murren.

3. Costs of the proceedings to be paid by defendants.

It is ordered that the prothonotary shall give notice of the filing of this adjudication pursuant to the provisions of Pa.R.C.P. 1518. Unless exceptions or objections hereto are filed within 20 days, the prothonotary shall on praecipe enter this decree as a final decree.